IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

J & J SPORTS PRODUCTIONS, INC., )
                                )
     Plaintiff,                 )
                                )
          v.                    )      1:11CV1141
                                )
LUCIA SANTILLAN, INDIVIDUALLY   )
and d/b/a LA REGIA LATINA       )
MEXICAN RESTAURANT; and LA      )
REGIA CORP., a business entity  )
d/b/a LA REGIA LATINA MEXICAN   )
RESTAURANT,                     )
                                )
     Defendants.                )

**MEMORANDUM OPINION AND ORDER**

The instant matter comes before the undersigned United States Magistrate Judge on Defendant Lucia Santillan's Motion for Relief from the Entry of Default (Docket Entry 13). (See Docket Entry dated May 25, 2012.) For the reasons that follow, the instant Motion will be granted.[1]

BACKGROUND

Plaintiff, a corporation based in Campbell, California, brought the instant action against Lucia Santillan, individually

---

[1] The entry of default (and thus the decision to set aside or to leave in effect such an entry) constitutes a pretrial matter that does not dispose of any claim or defense; as a result, courts have treated motions of this sort as subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). See, e.g., Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002); L & M Cos., Inc. v. Biggers III Produce, Inc., No. 3:08CV309-RJC-DCK, 2010 WL 1439411, at *8 & n.3 (W.D.N.C. Apr. 9, 2010) (unpublished). Under these circumstances, the undersigned Magistrate Judge will enter an order rather than a recommendation.

and doing business as La Regia Latina Mexican Restaurant, a commercial establishment located in Durham, North Carolina, as well as the corporate owner of said commercial establishment. (Docket Entry 1, ¶¶ 5-7.) According to the Complaint, Plaintiff had exclusive nationwide distribution rights to the program <u>The Event: Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program</u> ("the Program"), airing on March 13, 2010. (<u>Id.</u> ¶ 9.) The Complaint further alleges that Defendants intercepted the Program and exhibited it at their establishment without authorization from Plaintiff. (<u>Id.</u> ¶ 12.) Based on these allegations, the Complaint seeks relief under 47 U.S.C. §§ 553 and 605, as well as for conversion under North Carolina law. (<u>See id.</u> ¶¶ 8-25.)

On January 24, 2012, Plaintiff filed an executed Proof of Service of the Summons, in which a private process server affirmed that she "personally served the summons" on Lucia Santillan at 8:00 PM on January 18, 2012. (Docket Entry 5.) On March 18, 2012, Plaintiff filed a Motion for Entry of Default (Docket Entry 8) "on the grounds that [Lucia Santillan and La Regia Corp.] [have] failed to appear or otherwise respond to the Summons and Complaint within the time prescribed by the Federal Rules of Civil Procedure" (<u>id.</u> at 1). The Clerk of Court entered default against Defendants on March 19, 2012. (Docket Entry 9.)

On April 16, 2012, Ms. Santillan filed the instant Motion to set aside the default. (Docket Entry 13.) Plaintiff timely responded in opposition. (Docket Entry 15.)

DISCUSSION

The Federal Rules of Civil Procedure provide that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The United States Court of Appeals for the Fourth Circuit has set forth the relevant factors to make this determination as follows:

> When deciding whether to set aside an entry of default, a district court should consider [1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic.

Payne v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006). The Court must liberally construe Rule 55(c) "to provide relief from the onerous consequences of defaults and default judgments[,]" Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (internal quotation marks omitted), because the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits[,]" Colleton Prep. Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

<u>A. Meritorious Defense</u>

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party . . . ." <u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843 F.2d 808, 812 (4th Cir. 1988); <u>see also</u> <u>United States v. Moradi</u>, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which if believed would permit either the Court or the jury to find for the defaulting party."); <u>Maryland Nat'l Bank v. M/V Tanicorp I</u>, 796 F. Supp. 188, 190 (D. Md. 1992) ("The mere assertion of a meritorious defense is not enough, Defendant must state the underlying facts to support the defense.").

Ms. Santillan claims she has "strong, meritorious defenses to any and all claims stated in Plaintiff's Complaint . . . ." (Docket Entry 14 at 4.) She asserts that she "rarely spent much time at the [commercial establishment in which the unauthorized publication allegedly occurred,] . . . [she] was not even at the [establishment] at the time of the alleged unlawful publication . . . [and] [i]f the Program was unlawfully publicized, it would have been without Santillan's knowledge or approval." (<u>Id.</u> at 3.) As a result, she states that "Plaintiff could only prevail on its claim against her if it were to successfully pierce the corporate veil of La Regia." (<u>Id.</u> at 4.) Plaintiff, on the other hand, argues that "[t]he fact that [Ms. Santillan] may not have been

-4-

physically present or that she did not personally approve the interception of the Program are [sic] not, in and of themselves, meritorious defenses."  (Docket Entry 15 at 6.)

An individual defendant who has "the right and ability to supervise the violations and a strong financial interest in the activity" may be liable under §§ 553 and 605.  Joe Hand Promotions, Inc. v. Angry Ales, Inc., Civil Case No. 3:06cv73, 2007 WL 3226451, at *4 (W.D.N.C. Oct. 29, 2007) (unpublished) (citing J & J Sports Prods., Inc. v. Benson, No. CV-06-119 (CPS), 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (unpublished)).  However, courts have noted that, in order to show individual liability, "[a]llegations of ownership of the establishment, without more, are insufficient to establish personal liability under this section." J & J Sports Prods., Inc. v. Dougherty, Civil Action No. 12-cv-1255-JD, 2012 WL 2094077, at *2 (E.D. Pa. June 11, 2012) (unpublished); see also J & J Sports Prods., Inc. v. MayrealII, LLC, __ F. Supp. 2d __, __, 2012 WL 346649, at *5 (D. Md. Feb. 1, 2012) (finding no individual liability where plaintiff alleged, "without distinguishing between the individual defendants and [the establishment], that '[d]efendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program,' and that the violation 'by each of the Defendants [was] done willfully and for purposes of direct or indirect commercial advantage or private financial gain'"); J & J Sports Prods., Inc. v. Centro Celvesera La

-5-

Zaona, LLC, No. 5:11-CV-00069-BR, 2011 WL 5191576, at *3 (E.D.N.C. Nov. 1, 2011) (unpublished) (rejecting individual liability under these circumstances: "The only allegation in the complaint that pertains to [the defendant] individually is the allegation of his being the principal of the corporate defendant, which defendants admit. No allegation concerns his participation in the offending conduct or obtaining any direct financial benefit from that conduct.").

Plaintiff's Complaint in this case alleges only that "defendant, Lucia Santillan, is an owner, and/or operator, and/or licensee, and/or permitee [sic], and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as La Regia Latina Mexican Restaurant . . .," that "each and every of the above named defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program[,]" and that such "unauthorized interception, publication, exhibition and divulgence by each of the defendants were done willfully and for purposes of direct or indirect commercial advantage or private financial gain." (Docket Entry 1, ¶¶ 6, 12.)

Although "a division of authority" appears to exist as to the outer limits of individual liability, MayrealII, LLC, __ F. Supp. 2d at __, 2012 WL 346649, at *4 (collecting cases), at this stage, Ms. Santillan's proffer suffices to establish that "either the

-6-

Court or the jury [could] find for the defaulting party," Moradi, 673 F.2d at 727. The first factor thus weighs in favor of setting aside the Clerk's entry of default.

### B. Reasonable Promptness

"Whether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each occasion . . . ." Id. Ms. Santillan filed her motion to set aside entry of default on April 16, 2012, approximately three months after service of the Complaint and 28 days after the Clerk entered a default. (See Docket Entries 5, 9, 13.)[2] Other courts in this Circuit have weighed this factor in favor of the defaulting party where the defaulting party waited longer to move to set aside the default. See, e.g., Vick v. Wong, 263 F.R.D. 325, 330 (E.D. Va. 2009) (finding that reasonable promptness factor weighed in favor of setting aside default where moving party did not respond for more than two months after clerk entered default, but did respond a few weeks after plaintiff filed motion for entry of default judgment); Wainwright's Vacations, LLC v. Pan Am. Airways

---

[2] Ms. Santillan claims she "was never served a copy of the Summons in this action[,]" and therefore was "unaware that there was a deadline to file a formal response to Plaintiff's Complaint." (Docket Entry 14 at 3; see also Docket Entry 14-1, ¶¶ 2-6; Docket Entry 14-3, ¶ 3.) She states that she "did not discover the deadline until she received the motion for entry of default and the order thereon. As such, there is sufficient good cause for the Court to grant relief from such entry of default." (Docket Entry 14 at 3.) In light of the Court's treatment of this factor, no need exists to consider Ms. Santillan's foregoing argument in this context.

-7-

Corp., 130 F. Supp. 2d 712, 718 (D. Md. 2001) (concluding that moving party acted with reasonable promptness by making motion to vacate default slightly more than a month after entry of default).

Under these circumstances, the second factor supports setting aside the entry of default.

### C. Personal Responsibility

"[J]ustice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." Moradi, 673 F.2d at 728. The Fourth Circuit has explained the significance of this factor as follows:

> This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside. When the party is at fault, the latter interests dominate . . . .

Augusta Fiberglass Coatings, 843 F.2d at 811.

Ms. Santillan contends that she "was never served a copy of the Summons in this action" and therefore "was never informed that there was a pending deadline." (Docket Entry 14 at 3.) However, Ms. Santillan admits that she did receive "a letter from Plaintiff's counsel and a copy of Plaintiff's Complaint." (Id.) She did not include a copy of the "letter" with her Motion. (See Docket Entries 14, 14-1, 14-2, 14-3.) Plaintiff argues that "the 'letter' to which [Ms. Santillan] refers is actually the *Summons*

-8-

(which provides [Plaintiff's attorney's] name and address on the first page as counsel for Plaintiff)." (Docket Entry 15 at 5 (emphasis in original).) The process server averred that she delivered a copy of the Complaint <u>and</u> the Summons to Ms. Santillan on January 18, 2012. (Docket Entry 15-2, ¶ 4; <u>see also</u> Docket Entry 5 at 1.)

The Proof of Service indicating the process server served the Summons on Ms. Santillan (Docket Entry 5), in addition to the process server's affidavit averring the same (Docket Entry 15-2, ¶ 4), establish a prima facie showing of proper service. <u>See</u> <u>Blair v. City of Worcester</u>, 522 F.3d 105, 111 (1st Cir. 2008) ("A return of service generally serves as *prima facie* evidence that service was validly performed."); <u>Trademark Remodeling, Inc. v. Rhines</u>, No. PWG-11-1733, 2012 WL 1123875, at *6 (D. Md. Mar. 30, 2012) (unpublished) ("Generally, the filing of a proper proof of service is *prima facie* evidence of valid service of process." (internal citations omitted)). The affidavits of Ms. Santillan and her son (Docket Entries 14-1, 14-3), absent a copy of the alleged "letter from Plaintiff's counsel" (Docket Entry 14 at 3), do not unequivocally rebut the proof of valid service, particularly in light of Plaintiff's claim that the Summons included Plaintiff's attorney's name and address on the first page (Docket Entry 15 at 5; Docket Entry 15-1, ¶ 4).

Even if Ms. Santillan did not in fact receive a copy of the Summons, she did receive a copy of the Complaint (Docket Entry 14 at 3), yet apparently did not contact an attorney at that point (see id.). The docket shows that Ms. Santillan's counsel, Edward H. Maginnis, entered his appearance while simultaneously filing the instant Motion. (See Docket Entries 10 & 14.)

Accordingly, Ms. Santillan is "personally responsible" for the entry of default, and, as a result, the third factor weighs against setting it aside.

### D. Prejudice

In support of a showing of prejudice, Plaintiff asserts that "Defendant's actions, including her apparent loss of the Summons, indicates that there will be increased difficulties in discovery. In addition, based on the Affidavits of Defendant and her son, which both present the same facts, but which, objectively are unsupportable, there is certainly an opportunity for fraud and collusion." (Docket Entry 15 at 7.)

The prejudice Plaintiff asserts is purely speculative and unrelated to the delay. The Fourth Circuit has found prejudice lacking under the following circumstances:

> There was no missing witness in the case whose testimony was made unavailable by the delay; there was similarly no dead witness; neither were there any records made unavailable by the delay, nor was there any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay. . . . So the record shows without contradiction that the plaintiff suffered no prejudice on account of the delay.

-10-

Lolatchy, 816 F.2d at 952-53. These same circumstances exist in this case. Thus, this factor weighs in favor of setting aside the entry of default.

### E. History of Dilatory Action

This case is in an early stage of litigation and, separate from the delayed response to the Complaint, the record does not reflect evidence of dilatory conduct by Ms. Santillan. This factor therefore favors setting aside the entry of default.

### F. Less Drastic Sanctions

"Neither party has suggested alternative sanctions, but the Court [can] certainly consider any suggestions that are brought before it, such as a motion for reimbursement of Plaintiff's costs associated with [his] . . . response to Defendant's motion to set aside default. Therefore, this factor counsels in favor of setting aside default." Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp., 812 F. Supp. 2d 710, 727-28 (E.D. Va. 2011) (internal citation omitted).

### CONCLUSION

To summarize, factors one, two, four, five and six identified by the Fourth Circuit in Payne support setting aside the entry of default and factor three does not. Furthermore, the Fourth Circuit has stated a strong preference that "defaults be avoided and that claims and defenses be disposed of on their merits." Colleton

-11-

Prep. Acad., 616 F.3d at 417.  Under these circumstances, good cause exists to set aside the entry of default.

**IT IS THEREFORE ORDERED** that Defendant Lucia Santillan's Motion for Relief from the Entry of Default is **GRANTED**.  Defendant Santillan shall answer or otherwise respond to the Complaint by July 18, 2012.

                                                   /s/ L. Patrick Auld
                                                     **L. Patrick Auld**
                                       **United States Magistrate Judge**
July 11, 2012

-12-

Case 1:11-cv-01141-LPA   Document 16   Filed 07/11/12   Page 12 of 12