IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

J & J SPORTS PRODUCTIONS, INC.,  )
                                 )
    Plaintiff,                   )
                                 )
        v.                       )     1:11CV1141
                                 )
LUCIA SANTILLAN, individually    )
and d/b/a LA REGIA LATINA        )
MEXICAN RESTAURANT; and LA       )
REGIA CORP., a business entity   )
d/b/a LA REGIA LATINA MEXICAN    )
RESTAURANT,                      )
                                 )
    Defendants.                  )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge on Defendant Lucia Santillan's Motion to Dismiss (Docket Entry 17). (See Docket Entry dated Aug. 28, 2012; see also Docket Entries dated Dec. 30, 2011, and Mar. 1, 2012 (designating case as subject to handling pursuant to this Court's Amended Standing Order No. 30 and assigning case to undersigned Magistrate Judge, respectively).)[1]  For the reasons that follow, the Court should grant the instant Motion in part and deny it in part.

---

[1] Under said Standing Order, "[t]he magistrate judge to whom the case is assigned will rule or make recommendations upon all motions, both non-dispositive and dispositive." M.D.N.C. Amended Standing Order No. 30, ¶ 2; see also M.D.N.C. LR72.2 ("Duties and cases may be assigned or referred to a magistrate judge . . . by the clerk in compliance with standing orders . . . .").

BACKGROUND

Plaintiff, a corporation based in Campbell, California, brought the instant action against Defendant Lucia Santillan, individually and doing business as La Regia Latina Mexican Restaurant, a commercial establishment located in Durham, North Carolina ("the Establishment"), as well as La Regia Corp., the corporate owner of the Establishment. (Docket Entry 1, ¶¶ 5-7.) According to the Complaint, Plaintiff had exclusive nationwide distribution rights to the program <u>The Event: Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program</u> ("the Program"), airing on March 13, 2010. (<u>Id.</u> ¶ 9.) The Complaint further alleges that Defendants intercepted the Program and exhibited it at the Establishment without Plaintiff's authorization. (<u>Id.</u> ¶ 12.) Based on these allegations, the Complaint seeks relief under 47 U.S.C. §§ 553 and 605 (collectively, "the Cable Act") as well as for conversion under North Carolina law. (<u>See</u> <u>id.</u> ¶¶ 8-25.)

The Clerk of Court entered defaults against Defendants on March 19, 2012. (Docket Entry 9.) The Court thereafter granted Defendant Santillan's Motion to Set Aside Default (Docket Entry 13). (Docket Entry 16.) Defendant Santillan subsequently filed the instant Motion to Dismiss (Docket Entry 17), to which Plaintiff has responded (Docket Entry 19) and Defendant Santillan has replied (Docket Entry 20).

-2-

DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009).

<u>A. Cable Act Counts</u>

In the instant case, Plaintiff's Complaint alleges the following concerning Defendant Santillan:

> 6. Plaintiff is informed and believes, and alleges thereon that defendant, Lucia Santillan, is an owner, and/or operator, and/or licensee, and/or permitee [sic], and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as La Regia Latina Mexican Restaurant, 2601 Apex Hwy 55, Durham, NC 27713.

-3-

> . . .
>
> 12. With full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so, each and every of the above named defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission . . . . Said unauthorized interception, publication, exhibition and divulgence by each of the defendants were done willfully and for purposes of direct or indirect commercial advantage or private financial gain.

(Docket Entry 1, ¶¶ 6, 12.) Liability under the Cable Act can extend to an individual defendant who has "the right and ability to supervise the violations and a strong financial interest in the activity . . . ." Joe Hand Promotions, Inc. v. Angry Ales, Inc., Civil Case No. 3:06cv73, 2007 WL 3226451, at *4 (W.D.N.C. Oct. 29, 2007) (unpublished) (citing J & J Sports Prods., Inc. v. Benson, No. CV-06-119 (CPS), 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (unpublished)).

As to the allegations necessary to support a claim against an individual under the Cable Act, "a division of authority" exists, J & J Sports Prods., Inc. v. MayrealII, LLC, 849 F. Supp. 2d 586, 590 (D. Md. 2012) (comparing cases), a fact recognized by the Parties (see Docket Entry 18 at 3; Docket Entry 19 at 3). Courts largely agree that, in order to show individual liability, "[a]llegations of ownership of the establishment, without more, are insufficient to establish personal liability under either section [553 or 605]." J & J Sports Prods., Inc. v. Dougherty, Civil Action No. 12-cv-1255-JD, 2012 WL 2094077, at *2 (E.D. Pa. June 11,

-4-

2012) (unpublished); see also J & J Sports Prods., Inc. v. Centro Celvesera La Zaona, LLC, No. 5:11-CV-00069-BR, 2011 WL 5191576, at *3 (E.D.N.C. Nov. 1, 2011) (unpublished) (rejecting individual liability under these circumstances: "The only allegation in the complaint that pertains to [the defendant] individually is the allegation of his being the principal of the corporate defendant, which defendants admit. No allegation concerns his participation in the offending conduct or obtaining any direct financial benefit from that conduct."); Joe Hand Promotions, Inc. v. Coaches Sports Bar, 812 F. Supp. 2d 702, 703 (E.D.N.C. 2011) ("Apart from stating that [the individual defendant] is the principal of [the establishment], the complaint does not mention him. Absent allegations that he authorized, directed, or supervised the illegal interception, [the plaintiff] cannot establish [the individual defendant's] individual liability.").

On the other hand, courts generally find allegations that an owner or operator held supervisory authority over the establishment at issue sufficient to assert individual liability. See, e.g., Joe Hand Promotions, Inc. v. Phillips, No. 06 Civ. 3624(BSJ)(JCF), 2007 WL 2030285, at *3 (S.D.N.Y. July 17, 2007) (unpublished) (finding liability available where complaint alleged individual defendant was "principal and sole proprietor of [establishment], had supervisory capacity and control over its activities on the day [in question], and received a financial benefit from them"),

-5-

recommendation adopted, 2007 WL 2245351 (S.D.N.Y. Aug. 3, 2007) (unpublished); see also J & J Sports Prods., Inc. v. Tellez, No. 11-CV-2823, 2011 WL 6371521, at *3-4 (E.D.N.Y. Dec. 20, 2011) (unpublished) (sustaining claim where complaint alleged individual defendant "'is an officer, director, shareholder and/or principal of' [establishment] and 'the individual with supervisory capacity and control over the activities occurring within the establishment on [date in question]'"); J & J Sports Prods., Inc. v. Benson, No. CV-06-1119 (CPS), 2007 WL 951872, at *1, *7 (E.D.N.Y. Mar. 27, 2007) (unpublished) (allowing individual liability claim where complaint alleged individual defendants were "officers, directors, shareholders and/or principals of and doing business as [establishment] . . . [and] were the individuals with supervisory capacity and control over activities occurring within the Establishment on [date in question]").

However, where a complaint does not allege that an individual defendant possessed supervisory capacity or participated directly in unlawful conduct, courts have gone in different directions. Some have treated an allegation of ownership and boilerplate language about participation as to all defendants or their agents, such as set forth in the instant Complaint (see Docket Entry 1, ¶ 12), as sufficient to survive a motion to dismiss. See, e.g., J & J Sports Prods., Inc. v. L & J Grp., LLC, No. RWT 09cv3118, 2010 WL 816719, at *2 (D. Md. Mar. 4, 2010) (unpublished)

(declining to dismiss where complaint alleged individual defendants were principals and co-owners of establishment and that "each and every of the above named Defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program"). Others require more. See, e.g., MayrealII, 849 F. Supp. 2d at 591-92 (finding allegations insufficient to support individual liability where complaint alleged, "without distinguishing between the individual defendants and [the establishment], that '[d]efendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program,' and that the violation 'by each of the Defendants [was] done willfully and for purposes of direct or indirect commercial advantage or private financial gain'"); see also J & J Prods., Inc. v. Cole's Place, Inc., Civil Action No. 3:10CV-732-S, 2012 WL 469918, at *2 (W.D. Ky. Feb. 13, 2012) (unpublished) ("Simply referring to the owner and the corporation collectively as 'the Defendants' [in alleging they 'willfully intercepted and transmitted the broadcast'] is insufficient to identify [the individual defendant's] individual role in the misconduct, if any. Without more, such general allegations are insufficient, even though admitted by default, to establish that [the individual defendant] 'had a right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct.'"). The language deemed insufficient in MayrealII is

nearly identical to the language in the instant case.  Compare MayrealII, 849 F. Supp. 2d at 591-92, with Docket Entry 1, ¶ 12.

The court in MayrealII considered the ruling in L & J Group and declined to follow it for persuasive reasons.  See MayrealII, 849 F. Supp. 2d at 591.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and therefore does not state a claim.  Here, as in MayrealII, the Complaint alleges, "without distinguishing between the individual defendant[] and [the corporate owner]," MayrealII, 849 F. Supp. 2d at 591, that "[D]efendants and/or their agents, servants, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission . . . ." (Docket Entry 1, ¶ 12).  Such allegations represent "a mere 'formulaic recitation of the elements of [the] cause of action.'"  MayrealII, 849 F. Supp. 2d at 592 (quoting Twombly, 550 U.S. at 555).  The Complaint "alleges no facts to show that [Santillan] had personal knowledge of, or the ability to supervise and control, the alleged unlawful interception of the Program," id. (See Docket Entry 1, ¶¶ 1-25.)

In responding to the instant Motion, Plaintiff requested that, "[i]f this Court determines that Plaintiff has not stated a valid claim against the individual Defendants, this Court should grant

-8-

Plaintiff leave to amend its Complaint to cure any deficiencies therein and to supplement its allegations against the individual Defendants." (Docket Entry 19 at 9.) In light of the division of authority surrounding the pleading requirements for individual liability, the undersigned agrees. The Court should allow Plaintiff an opportunity to correct the deficiencies in its Complaint. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); see also Joe Hand Promotions, Inc. v. Okafor, No. 5:11-CV-618-BO, at 4 (E.D.N.C. June 12, 2012) (unpublished) (noting division of authority and granting plaintiff leave to amend complaint that failed to state claim as to individual defendants).[2]

## B. Conversion

Defendant Santillan's instant Motion also asserts that Plaintiff's conversion claim fails under Rule 12(b)(6). (Docket Entry 17 at 1.) In this regard, her supporting brief argues that the Complaint lacks sufficient allegations "to support a piercing of the corporate veil," as purportedly required to hold her liable for conversion. (Docket Entry 18 at 5.) Plaintiff has responded

---

[2] Defendant Santillan contends that the Court should deny leave to amend because such action "would encourage Plaintiff to continue filing such deficient complaints on a fishing expedition for default judgments, safe in the knowledge that if a claim is defended by counsel, it can simply move for leave to amend." (Docket Entry 20 at 4.) If this Recommendation stands, Plaintiff will have notice of the allegations deemed necessary by this Court in this context and, going forward, the Court can police any abuse of the sort forecast by Defendant Santillan.

-9-

(with citation of authority) that "conversion is an intentional tort [and that] . . . it is not necessary to pierce the corporate veil for intentional torts." (Docket Entry 19 at 8.) Santillan offered no rebuttal to Plaintiff's argument or authority on point. (See Docket Entry 20 at 1-4.)

Setting aside the veil-piercing issue, however, it appears that Plaintiff's conversion claim fails as a matter of law on other grounds not subject to correction by amendment. More specifically, "North Carolina law defines conversion as 'an unauthorized assumption and exercise of the right of ownership over <u>goods or personal chattels</u> belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" <u>Precision Components, Inc. v. C.W. Bearing USA, Inc.</u>, 630 F. Supp. 2d 635, 642 (W.D.N.C. 2008) (emphasis added) (quoting <u>Norman v. Nash Johnson & Sons' Farms, Inc.</u>, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000)). "In North Carolina, only goods and personal property are properly the subjects of a claim for conversion. A claim for conversion does not apply to real property. Nor are intangible interests such as business opportunities and expectancy interests subject to a conversion claim." <u>Norman</u>, 140 N.C. App. at 414, 537 S.E.2d at 264; <u>see also</u> <u>DirecTV, Inc. v. Benson</u>, 333 F. Supp. 2d 440, 456 (M.D.N.C. 2004) (Beaty, J.) (finding right to access satellite signals an intangible property right and therefore not subject to conversion claim under North Carolina law).

Plaintiff in this case alleges that, "[b]y its acts as aforesaid in interception, exhibiting, publishing, and divulging the Program at the above-captioned address, the aforementioned [D]efendants, tortuously [sic] obtained possession of the Program and wrongfully converted it to its [sic] own use and benefit." (Docket Entry 1, ¶ 23.) The right to access or transmit the Program is not a tangible good, nor is the Program itself. See DirecTV, 333 F. Supp. 2d at 456. The Complaint thus fails to state a claim for conversion under North Carolina law.[3]

---

[3] The fact that Defendant Santillan failed to raise this ground for dismissal does not affect the Court's authority to dismiss on this basis. See Mildfelt v. Circuit Ct. of Jackson Cnty., Mo., 827 F.2d 343, 345 (8th Cir. 1987) ("A district court has the power to sua sponte dismiss a complaint for failure to state a claim."); Aloi v. Quinlan, Civ. A. No. 92-126 SSH, 1992 WL 165990, at *2 n.5 (D.D.C. June 9, 1992) ("Although the issues raised by the Court were not briefed by either party to this action, the Court finds that dismissal is appropriate under the circumstances of this case: defendants were served, defendants did move for dismissal for failure to state a claim (albeit on different grounds), and plaintiff was on notice and responded (several times) to such motion."); Jensen v. Conrad, 570 F. Supp. 91, 99-100 (D.S.C. 1983) ("[T]he court is constrained to raise sua sponte the viability of the plaintiff's claim against [the defendant] under the South Carolina Wrongful Death Act . . . . As set forth in 5 C. Wright and A. Miller, Federal Practice and Procedure § 1357 (1973): 'Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim.'"), aff'd on other grounds, 747 F.2d 185, disapproved in part on other grounds, DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197-98 & n.4 (1989); Rogers v. Fuller, 410 F. Supp. 187, 192 (M.D.N.C. 1976) (Ward, J.) ("[T]he Court will, sua sponte, dismiss those claims for failure to state a claim upon which relief can be granted."). Indeed, in discussing the authority of a district court to dismiss a complaint sua sponte, the United States Court of Appeals for the Fourth Circuit has observed that, "[w]here the face of a complaint plainly fails to state a claim for relief, a

CONCLUSION

The Complaint fails to state a claim under the Cable Act or under North Carolina law regarding conversion. However, because no relevant authority made clear what allegations a plaintiff had to present under the Cable Act for purposes of individual liability, the Court should give Plaintiff an opportunity to amend the Complaint as to those counts.

**IT IS THEREFORE RECOMMENDED** that Defendant Lucia Santillan's Motion to Dismiss (Docket Entry 17) be granted in part and denied in part, in that the Court should dismiss the claim of conversion with prejudice, but should permit Plaintiff to amend the Cable Act claims.

                                         /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                            **United States Magistrate Judge**

December 28, 2012

---

district court has 'no discretion' but to dismiss it." Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n.10 (4th Cir. 2006) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). Moreover, to the extent some courts (including the Fourth Circuit in an unpublished opinion) have required notice and an opportunity to respond before any sua sponte dismissal, see, e.g., Carroll v. Fort James Corp., 470 F.3d 1171, 1176-77 (5th Cir. 2006); Webb v. Environmental Prot. Agency, No. 90-2106, 914 F.2d 1493 (table), 1990 WL 139665, at *1 (4th Cir. Sept. 27, 1990) (unpublished), Plaintiff has notice via this Recommendation and a chance to respond via objection under Federal Rule of Civil Procedure 72(b).